UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIMOTHY H. ORR and MARIA ORR, | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | Case No. 3:02cv2165 (AVC) |
| V. | : | |
| | : | |
| ROYAL INDEMNITY COMPANY d/b/a | : | |
| ROYAL & SUNALLIANCE, | : | |
| Defendant. | : | January 9, 2004 |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**I.     INTRODUCTION**

The Plaintiffs, Timothy H. Orr and Maria Orr ("Plaintiffs"), hereby submit this memorandum of law in opposition to Defendant Royal Indemnity Company d/b/a Royal & Sunalliance's ("Royal" or "Defendant") Motion to Dismiss and Memorandum of Law in Support of Motion to Dismiss, both dated November 21, 2003 (collectively "Second Motion to Dismiss").  More particularly, Plaintiffs state as follows:

**II.    BACKGROUND**

1.     On or about January 21, 2003, Defendant filed its first Motion to Dismiss ("First Motion to Dismiss").

2.     By Ruling dated September 19, 2003, the Court granted in part and denied in part the First Motion to Dismiss ("Ruling").

3.     More particularly, the Court denied Defendant's attempt to dismiss the (i) promissory estoppel, (ii) fraud, (iii) breach of implied covenant of good faith and fair dealing, and (iv) negligence counts in Plaintiffs' Complaint.

4. However, the Court dismissed the Breach of Implied Contract count (Count Three) due to Plaintiffs' failure to properly allege the necessary consideration, and further dismissed the CUTPA/CUIPA count (Count Six) due to Plaintiffs' failure to allege conduct by Defendant that indicated a general business practice.

5. Pursuant to Fed. R. Civ. Pro. 15(a), Plaintiffs filed the First Amended Complaint, dated October 24, 2003 ("First Amended Complaint"), in which Plaintiffs cured the defects to the Breach of Implied Contract and CUTPA/CUIPA counts by repleading such counts in the manner in which the Court had articulated in the Ruling.

6. In response, Defendant filed the Second Motion to Dismiss, claiming that such counts remain insufficient.

### III. STANDARD OF REVIEW

In evaluating the sufficiency of a complaint, the accepted rule is that "…a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957). Further, on a motion to dismiss, the court is required to "…read the complaint with great generosity… ." Yoder v. Orthomolecular Nutrition Institute, Inc., 751 F.2d 555, 558 (2d Cir. 1985) (citation omitted). Under this broad and flexible standard, it is the duty of the court to "…determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded." Id. (citations omitted; internal quotation marks omitted). Further, "[i]t is elementary that, on a motion to dismiss, a

complaint must be read as a whole, drawing all inferences favorable to the pleader." Id. at 562. (citation omitted).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scala v. American Airlines, 2003 WL 1130811 (D.Conn. 2003) (citation omitted; internal quotation marks omitted) (deciding motion to dismiss under Federal Rules of Civil Procedure 12(c), which applies the same standard as that applicable to a motion under 12(b)(6)). Further still, it is well established that "[u]nder the Federal Rules of Civil Procedure, most complaints need be phrased only in general terms sufficient to put the defendants on notice as to the nature of the claims being asserted against them." Cramer v. General Telephone & Electronics, 582 F.2d 259, 272 (3d Cir. 1978).

As will be demonstrated conclusively below, when reviewed under the appropriate standard, it is clear that Counts Three (Breach of Implied Contract) and Six (CUTPA/CUIPA) of the First Amended Complaint are more than sufficient to withstand Defendant's 12(b)(6) challenge, and therefore, Defendant's Second Motion to Dismiss must be denied in its entirety.

### IV.    ARGUMENT

#### A.    Count Three – Plaintiffs Have Stated A Claim Of Breach Of An Implied Contract.

Defendant first argues that Plaintiffs have intertwined their implied contract claim with their express contract claim (Count One), and therefore no implied contract can exist as a matter of law. (Second Motion to Dismiss, p. 4). Defendant then states that the implied contract claim

should be dismissed because Plaintiffs' allegations are merely a restatement of the breach of express contract claim. (Second Motion to Dismiss, p. 5). Significantly, Defendant asserted the exact same arguments in the First Motion to Dismiss. While Defendant makes note of such fact, and cites to the Ruling in explanation thereof,[1] Defendant fails to point out that the Court had already addressed such specific issues when denying Defendant's attempt to dismiss the promissory estoppel claim (Count Two). More particularly, the Court stated that:

> In relation to such alternative claims, Fed. R. Civ. Pro. 8(e)(2) provides that "[a] party may set forth two or more statements of a claim … alternatively or hypothetically … . A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Relying on Rule 8(e)(2), the Second Circuit has made it plain that, at the "12(b)(6) stage, [a plaintiff] may maintain claims based upon mutually exclusive inferences from the facts alleged."

(Ruling, p. 11) (internal citations omitted). The Court further stated that:

> [A]ccording to Royal, the complaint simultaneously alleges both the existence and non-existence of a contract. At this stage of the litigation, however, this purported inconsistency is not grounds to dismiss the claim because inconsistent pleading, as well as alternative legal theory pleading, is expressly permitted under Rule 8(e)(2).

(Ruling, p. 12).

Further, as stated by Plaintiffs in response to the First Motion to Dismiss, "[a] contract implied in fact depends on an actual agreement that there be an obligation created by law that imposes a duty to perform, and it may be inferred from words, actions or conduct." Homecare, Inc. v. Acquarulo, 38 Conn.App. 772, 775 (1995) (citation omitted). The fact that an agreement exists between the parties does not preclude the finding of an implied contract where the

---

[1] Defendant explains that such arguments have been reasserted in the Second Motion to Dismiss due to the fact that the Court dismissed Count Three for its lack of alleged consideration, and therefore, the Court did not find it necessary to address any further arguments in the Ruling (Second Motion to Dismiss, p. 5, FN 1).

agreement in existence is silent as to the specific contractual obligation at issue with respect to the implied contract.  L. F. Pace & Sons, Inc. v. The Travelers Indemnity Company, 9 Conn.App. 30, 38 (1986) (court held that indemnity agreement between the parties did not preclude recovery for breach of an implied agreement to issue performance and payment bonds).

In this case, Plaintiffs have alleged a course of dealing, and a series of interactions between themselves and Defendant, that clearly give rise to the existence of an implied contract. Specifically, an implied in fact contract arose between Defendant and Plaintiffs based, in part, but not limited to, the direct oral promise made by Defendant's Insurance Adjuster to Plaintiffs to cover the total reconstruction of the fireplace and chimney should Hart's initial attempt to repair the chimney structure not succeed.  (First Amended Complaint, Count Three, ¶¶ 28-31, 43).  Further obligations under the implied contract arose when Defendant, through its Insurance Adjuster, agreed to repair and replace all damage caused by the fire, including but not limited to covering the reconstruction of the fireplace and chimney.  (First Amended Complaint, Count Three, ¶ 44).

Therefore, as the Court has already addressed and rejected these arguments in relation to the promissory estoppel claim, and Plaintiffs have alleged sufficient facts to support a implied contract the Court should deny Defendant's arguments as applied to the implied contract claim as well.

Defendant next argues that the First Amended Complaint still fails to allege adequate consideration to support a separate implied contract claim.  (Second Motion to Dismiss, p. 5). However, a close review of the First Amended Complaint reveals that such consideration has in fact been properly pled.

Defendant cites to New England Rock Services, Inc. v. Empire Paving, Inc., 53 Conn. App. 771, 776-77 (1999) for the proposition that Plaintiffs' obligations under the alleged implied contract were already owed under the Insurance Policy, and therefore, any additional agreement between the parties does not constitute a valid and binding contract. (Second Motion to Dismiss, pp. 5-6). However, Plaintiffs have alleged that Royal's representations and conduct during the claims process induced Plaintiffs to do more than originally obligated under the Insurance Policy. For instance, Plaintiffs allege that, in consideration of Royal's promises throughout the claims process, they paid for all out-of-pocket expenses associated with the fire. (First Amended Complaint, Count Three, ¶ 45). While Defendant argues that the right to reimbursement of such expenditures arises from the Insurance Policy (Second Motion to Dismiss, p. 6), Defendant fails to reference any portion of the Policy that previously obligates Plaintiffs to cover roughly $30,000.00 worth of expenditures from their own pocket. Clearly Plaintiffs were relying upon Royal's promises made during the claims process, and not upon any provision in the Policy, when they suffered such great personal expense to repair and replace their home and belongings. As such, Plaintiffs' obligation to bear such expenditures personally was separate and distinct from the Policy, and adequate consideration has been pled.

Plaintiffs further allege consideration by their expenditure of time and effort to supply Royal with estimates for certain repair and replacement costs. (First Amended Complaint, Count Three, ¶ 45). Defendant argues that Plaintiffs have failed to indicate whether Royal sought such estimates or if they conferred a benefit to Royal. (Second Motion to Dismiss, p. 6). First, Plaintiffs have adequately pled such allegation under the applicable standard of review on a motion to dismiss, as the extent of Plaintiffs' "time and effort" in obtaining the estimates and

their conferred value to Royal are factual questions that do not need to be proven at this stage. Second, despite Defendant's conclusory assertions, Plaintiffs have in fact alleged that Royal sought such estimates and that they were valuable to Royal. More particularly, in the Background section of the First Amended Complaint (which is incorporated by reference into Count Three), Plaintiffs allege that they (i) did as Royal instructed them to do throughout the claims process (First Amended Complaint, Background, ¶¶ 14, 23), (ii) obtained middle-range bids and estimates and submitted them to Royal for approval and payment (First Amended Complaint, Background, ¶¶ 15, 18-20), and (iii) Royal invariably rejected each estimate as too high above the "national average" despite Plaintiffs residing in a community with a cost of living which far exceeds the "national average." (First Amended Complaint, Background, ¶¶ 20, 21). It is also fair to infer that Royal requested and saw value in such estimates by the fact that Royal refused to approve any repairs to the chimney until Plaintiffs supplied it with an estimate that, despite warnings that such work would probably fail to repair the chimney properly, was cheap enough to approve. (First Amended Complaint, Background, ¶¶ 26, 27). As such, Plaintiffs' obligation to obtain and submit such estimates was separate and distinct from the Policy, and adequate consideration has been pled.

Plaintiffs further allege consideration by stating that they provided Royal access to their home and otherwise cooperated fully with all of Royal's directives during the claims process. (First Amended Complaint, Count Three, ¶ 45). While Defendant argues that such obligations arise from the Policy itself, Plaintiffs assert that Royal's oral representations induced them to do more than they were obligated to do under the Policy, especially in light of how poorly and unfairly Royal treated Plaintiffs during the claims process (See First Amended Complaint,

7

Background).  In fact, Plaintiffs make multiple allegations that, despite being very alarmed and upset at the bad faith conduct of Royal, Plaintiffs continued to be cooperative in reliance upon Royal's oral statements.  (First Amended Complaint, Background, ¶¶ 13, 14, 16, 23, 25, 31). Further, by flatly stating that Plaintiffs' allegations of consideration are "bogus" and "inadequate" because Plaintiffs were already so obligated under the Policy, Defendant is assuming facts that have not yet been proven, nor are they required to be proven under the standards of a motion to dismiss.  Royal's conclusory statements alone cannot serve as proof of such facts.  As such, Plaintiffs' obligation to provide access to their home and otherwise cooperate fully with Royal's directives was separate and distinct from the Policy, and adequate consideration has been pled.

In the alternative, should the Court countenance Defendant's pre-existing duty argument based upon the New England Rock Services case, Plaintiffs assert that the exception to such rule is applicable here.  More particularly, the court in New England Rock Services points out that in Blakeslee v. Board of Water Commissioners, 106 Conn. 642 (1927), the supreme court articulated an exception to the pre-existing duty rule, stating:

> "[W]here a contract must be performed under burdensome conditions not anticipated, and not within the contemplation of the parties at the time when the contract was made, and the promisee measures up to the right standard of honesty and fair dealing, and agrees, in view of the changed circumstances, to pay what is then reasonable, just, and fair, such new contract is not without consideration within the meaning of that term, either in law or in equity."

New England Rock Services, 53 Conn. App. at 777 (quoting Blakeslee, 106 Conn. at 656).  In this case, Plaintiffs have alleged that an implied contract was created through the communications and conduct of Royal during the claims process, and Plaintiffs' detrimental

8

reliance thereupon. More particularly, Royal's direct oral promise to Plaintiffs (that it would cover a total reconstruction of the chimney should initial attempts to repair it fail) meets the criteria for the exception as articulated by the <u>Blakeslee</u> court. Plaintiffs have more than adequately alleged unanticipated and burdensome conditions during the claims process created by Royal's conduct (<u>See</u> First Amended Complaint, Background, pp. 1-13). Further, being compelled by Royal to authorize a knowingly ineffective chimney repair project, which forced Plaintiffs to move their entire family out of the house for weeks on end, and otherwise cost Plaintiffs a significant amount of time and money (<u>See</u> First Amended Complaint, Background, ¶¶ 26-33), was surely not contemplated at the time the contract was made. As further evidence that such conditions were not anticipated or originally contemplated, Plaintiffs would not agree to authorize the repair work that Royal insisted upon without Royal's assurance that it would pay for a total reconstruction should the repairs fail, and initially would not give authorization of the repairs until it had such promise from Royal in writing. (First Amended Complaint, Background, ¶¶ 28-31). If Plaintiffs felt that Royal was previously obligated to reconstruct the chimney should repair attempts fail, they would not have so diligently attempted to have Royal's representations in writing. Finally, Plaintiffs, as promisees, acted honestly and in good faith when they agreed to authorize the repair work in reliance of Royal's representations, despite not agreeing with such method. As such, the exception to the pre-existing duty rule is applicable, and the implied contract was not without consideration.

Based on the foregoing, Plaintiffs have set forth a legally sufficient cause of action for breach of an implied contract, and therefore, the Motion to Dismiss Count Three should be denied.

**B.     Count Six -- Plaintiffs Have Stated A Claim Of A CUTPA/CUIPA Violation.**

In the Second Motion to Dismiss, Defendant first attacks Plaintiffs' CUTPA/CUIPA claim by reasserting its arguments regarding Fed. R. Civ. P. 9(b) (Second Motion to Dismiss, pp. 4, 7-9), despite the Court having already ruled on such issue in the Ruling on the First Motion to Dismiss.  More particularly, in the Second Motion to Dismiss, Defendant is again attempting to apply a stricter rule of pleading under Fed. R. Civ. P. 9(b), asserting that Plaintiffs' fraud count (Count Four) requires the CUTPA/CUIPA count (Count Six) to be stated with particularity. (Second Motion to Dismiss, p. 4, 7-9).  However, in relation to its decision on Plaintiffs' fraud and bad faith claims (Counts Four and Five) in the Ruling, the Court stated that:

> The court need not decide whether [Rule] 9(b) applies to [Plaintiffs' bad faith claim].  The court has previously concluded that [Plaintiffs] properly pled their fraud claim.  Accordingly, to the extent that their bad faith claim includes their fraud claim, it is properly pled.  Furthermore, [Plaintiffs'] bad faith claim is more than just a fraud claim; rather, it alleges a pattern of arbitrary denials of claims without adequate inspection.  Therefore, even if Rule 9(b) applied to a bad faith cause of action where the gravamen of such claim was fraud, as Royal contends, that principle is inapplicable in this case.

(Ruling, pp. 21-22).  Therefore, as the Court has previously concluded that Plaintiffs properly pled their fraud claim, and Plaintiffs' CUTPA/CUIPA claim is more than just a fraud claim; rather, it alleges a pattern of unfair claim settlement practices as to indicate a general business practice, the requirements of Rule 9(b) are inapplicable.  Further, to the extent that Rule 9(b) does apply, Count Six meets its heightened standard, as Plaintiffs have alleged several specific instances of Royal's misconduct during the claims process.  (First Amended Complaint,

Background, pp. 1-13). As such, Defendant's 9(b) argument is misplaced, and has already been rejected by the Court in this matter.

Defendant next argues that Plaintiffs have again failed to properly alleged conduct performed by Defendant with such frequency as to indicate a "general business practice." (Second Motion to Dismiss, p. 7). Defendant is once again mistaken.

In dismissing Plaintiffs' original CUTPA/CUIPA claim, the Court stated that Plaintiffs failed to allege any evidence of misconduct by Defendant in the processing of any claim other than their own, and therefore, such conduct did not rise to the level of a general business practice. (Ruling, pp. 24-25). Plaintiffs then utilized the Court's directives in re-alleging the CUTPA/CUIPA claim in the First Amended Compliant. More particularly, Plaintiffs allege that Royal has frequently committed unfair insurances practices in claims other than their own, as is indicative by the twenty-five separate complaints that have been brought against Defendant to the Connecticut Insurance Department since January of 2000, all of which were specifically regarding Royal's homeowners coverage, and the fact that Royal has been sued for bad faith many times over the past several years in multiple jurisdictions, including the District of Connecticut and the Connecticut Superior Court. (First Amended Complaint, Count Six, ¶¶ 51-52). Therefore, Plaintiffs allege that such multiple examples of challenges to Royal's conduct, together with the instant case, reflects a frequency tantamount to a general business practice of committing unfair insurance practices. (First Amended Complaint, Count Six, ¶ 54).

Defendant attempts to counter such allegations by flatly stating that Plaintiffs' added allegations are "baseless", and that suits are not "brought" in the Circuit Courts. (Second Motion to Dismiss, p. 9). However, Plaintiffs' allegations of Royal having been accused of such similar

11

conduct is backed up by a report furnished by the Connecticut Insurance Department, which report has been attached hereto as Exhibit A.  Further, while Defendant is technically correct regarding suits not being "brought" in Circuit Courts, it is not much of a stretch to infer that such cases were originally brought against Royal at the District Court level, and therefore, such allegations are unaffected by such technicality.

Defendant next argues that Plaintiffs have alleged that Royal has merely been "accused" of committing similar conduct with respect to any other insured, and that accusations do not necessarily make something so.  (Second Motion to Dismiss, pp. 9, 10).  Significantly, however, the main function of the Connecticut Department of Insurance is to resolve complaints that have been levied against insurance companies, and as a result, its participation rarely results in a full adjudication of alleged wrong-doing.  In fact, the Connecticut Department of Insurance's report (attached hereto as Exhibit A) lists several of the complaints has having been "settled" or "no action nec[essary]".  Further, as court actions against insurance companies pit lay-people against large institutional conglomerates, most claims are settled before reaching a verdict stage.  Moreover, it is in an insurance companies' best interest to settle any strong claim against it, as a negative final adjudication would leave them with no defense whatsoever to the "general practice" requirement, and in turn, to any CUTPA/CUIPA claims that may be brought in the future.

Finally, when taken in the light most favorable to Plaintiffs, several other accusations of wrongful conduct by Royal is sufficient to defeat a motion to dismiss.  In a recent Connecticut Superior Court case, O'Leary Limited Partnership v. Travelers Property Casualty Company, 2001 WL 399909, *3 (Conn. Super.), the court stated that, when applied to the appropriate

standard of review for a motion to dismiss, a plaintiff's alleged wrongful acts of the insurance company in its claim, together with a single example of similar conduct by the insurance company in another lawsuit, was enough to indicate a general business practice under Lees v. Middlesex Insurance Company, 229 Conn. 842 (1994), and deny the defendant's motion to dismiss a CUTPA/CUIPA claim.  More particularly, the court in O'Leary stated:

> The plaintiff alleges, … , that the defendant has commited the alleged wrongful act "with some frequency," "as is indicative" in the case of *Travelers v. Troyer*, which, together with the instant case, reflects a general business practice … .  Construing the allegations of the [the plaintiff's CUTPA/CUIPA claim] in the light most favorable to the pleader, the court concludes that sufficient facts have been alleged to support a CUTPA cause of action based on CUIPA violations.  The plaintiff does not allege that *Travelers v. Troyer* is the *only* other instance of the defendant's challenged conduct.  It alleges that *Travelers v. Troyer*, … , is *indicative* of the defendant's general business practice of unlawfully denying such losses.  Indeed, if, after discovery, it should be determined that *Travelers v. Troyer* is the only other case involving the defendant's challenged conduct, it is likely a motion for summary judgment on this count would be granted by the court.  Until discovery has been completed, however, the plaintiff is entitled to the opportunity to gather information supporting its claims that the defendant's alleged wrongful conduct has been committed with such frequency as to indicate a general business practice.

Id. at *3.

In this case, Plaintiffs have alleged not one lawsuit like the plaintiff in the O'Leary case, but several other lawsuits that accuse the same type of challenged conduct that Plaintiffs are alleging against Royal.  Plaintiffs have further alleged that over twenty-five different complaints have recently been filed with the Connecticut Insurance Department specific to unfair insurance practices by Royal in its homeowners coverage.  Such other examples of challenged conduct, together with the instant case, is indicative of the required frequency to satisfy the general business practice requirement, especially to defeat a motion to dismiss.  As suggested by the

court in O'Leary, Plaintiffs should be entitled to pursue information in discovery regarding the complaints of others against Royal, and thereafter be put to their proof of such alleged facts at trial.

Based on the foregoing, Plaintiffs have set forth a legally sufficient cause of action for CUTPA/CUIPA, and therefore, the Motion to Dismiss Count Six should be denied.

        THE PLAINTIFFS,
        TIMOTHY H. ORR and MARIA ORR


        By:_____
           Jeffrey M. McCormick (ct#21185)
           O'ROURKE & ASSOCIATES, LLC
           27 Pine Street
           New Canaan, CT  06840
           phone: (203) 966-6664
           fax:  (203) 966-5710

**CERTIFICATION**

This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, to counsel of record as listed below this 9th day of January, 2004.

_____
Jeffrey M. McCormick

Kathleen A. St. Onge, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103